IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


BRIAN L. WAGNER,

                    Plaintiff,

vs.                                        Case No. 16-2347-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

I.  **General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On December 22, 2014, administrative law judge (ALJ) Linda L. Sybrant issued her decision (R. at 13-28). Plaintiff alleges that he has been disabled since August 16, 2012 (R. at 13). Plaintiff is insured for disability insurance benefits through

December 31, 2016 (R. at 15).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 15).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 15).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18).  After determining plaintiff's RFC (R. at 19), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 26).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 26-27).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 27-28).

## III.  Did the ALJ err by not obtaining medical treatment records regarding plaintiff's treatment for heat stroke in 2009?

On October 22, 2013, a medical treatment record from Dr. Cannon gave a diagnostic impression of mood disorder/Psychotic disorder related to TBI (traumatic brain injury) (R. at 829-830).  On July 29, 2014, a medical treatment record from Dr. Cannon gave a diagnostic impression of traumatic brain injury related to heat stroke (R. at 855-856).  Another treatment record signed by Lois Blackmon, BA, on December 6, 2012, stated that claimant appears to be borderline intellectual functioning which has gotten worse since his stroke (R. at 773-774).  A medical record from July 10, 2013 stated that plaintiff reported

he had a bad heat stroke and was sent to the ICU in 2009 (R. at 38, 669). A medical record from Dr. Habib, dated May 24, 2010, indicates that plaintiff was admitted to the emergency room on May 23, 2010, noting a 5-day history of constant daily headaches, and stating that he had been mowing many lawns today out in the heat. Dr. Habib's impression included intractable tension-type headaches, probably secondary to heat stroke (R. at 544-546). Plaintiff and his wife reported that plaintiff had experienced problems since he suffered from heat exhaustion in 2009 (R. at 25, 467).

At the hearing on September 17, 2014, the transcript indicates as follows:

> ALJ:…There's a reference in 16F, 2, of being sent to ICU for a heat stroke in 2009. So I want whatever hospital E.R. or otherwise record on that?
>
> Atty: Okay.

(R. at 38). Later in the hearing, the transcript indicates the following:

> Q (by ALJ): Did you collect unemployment from that job?
>
> A (by plaintiff): No, workman's comp deal – it was a – when, I think, it's when I had my heat stroke.
>
> .....
>
> ALJ: yeah, let's get some documentation on that? And they may have – I mean I'd want it, the medical records related to that?

ATTY:  Okay.

                    ALJ:  Which would cover this ICU,
                    presumably?

(R. at 57-58).  Later, the ALJ again stated his interest in

obtaining the ICU records related to the heat stroke in 2009 (R.

at 59-60).

        On October 24, 2014, plaintiff's attorney wrote to the ALJ,

referencing the ICU visit for heat stroke in 2009 and indicating

that records were requested from St. John's Hospital beginning

8/6/2009.  However, the heat exhaustion records were not

included; they only sent records beginning May 23, 2010.  The

attorney then stated:  "The claimant requests assistance from

the Administration for obtaining any and all 2009 medical

records from St. John's Hospital" (R. at 345-346).  However, the

ALJ did not request such records before issuing her decision on

December 22, 2014.

        In her decision, the ALJ noted that Dr. Cannon had

diagnosed traumatic brain injury related to heat stroke.

However, the ALJ stated that the record contained no evidence of

a traumatic brain injury related to heat stroke (R. at 17).

Later in her decision, the ALJ noted that plaintiff alleged a

bad heat stroke in 2009 and being sent to ICU, but the ALJ

stated that there was no documentation that plaintiff was in the

ICU (R. at 21).  Finally, the ALJ indicated that plaintiff and

                                      7

his wife reported that plaintiff had experienced problems since he suffered heat stroke in 2009.  However, the ALJ then stated that the record contained no objective evidence of heat stroke, and noted that plaintiff had worked after the alleged heat stroke (R. at 25).  The ALJ went on to say that there is no documentation in the record that plaintiff was in the ICU (for heat stroke), that there is no objective medical evidence of any kind of stroke, residual effects from the alleged stroke, amnesia, balance problems or seizure disorder.  The ALJ concluded that the lack of objective medical support for plaintiff's allegations undermines his credibility (R. at 25). It is absolutely clear from the record that the ALJ's analysis of the medical opinions, medical evidence, plaintiff's credibility, and the RFC findings are influenced by the ALJ's repeated assertions that the record contains no evidence of plaintiff being in ICU for a heat stroke in 2009.

First, as noted above, medical records from May 23, 2010, (when plaintiff was admitted to the emergency room) from Dr. Habib indicate it was his impression that plaintiff had headaches secondary to a heat stroke (R. at 544-546).  This is objective evidence of a heat stroke in 2010, and it must be considered by the ALJ.

Second, the ALJ erred by not attempting to obtain the records of the alleged heat stroke in 2009.  42 U.S.C.

§ 423(d)(5)(B) states as follows:

> In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, **and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability. In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination**, prior to evaluating medical evidence obtained from any other source on a consultative basis.

(emphasis added). Although the claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues. This duty is especially strong in the case of an unrepresented claimant. The ALJ has a duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing. <u>Carter v. Chater</u>, 73 F.3d 1019, 1021, 1022 (10th Cir. 1996).

In the case of <u>Madrid v. Barnhart</u>, 447 F.3d 788, 790 (10th Cir. 2006), the court set forth the applicable law regarding the ALJ's duty to develop the record regarding medical evidence:

> "It is beyond dispute that the burden to prove disability in a social security case

is on the claimant." <u>Hawkins v. Chater</u>, 113
F.3d 1162, 1164 (10th Cir.1997); 20 C.F.R. §
404.1512(a) ( "[Y]ou must bring to our
attention everything that shows that you are
…disabled."). Nevertheless, because a social
security disability hearing is a
nonadversarial proceeding, the ALJ is
"responsible in every case 'to ensure that
an adequate record is developed during the
disability hearing consistent with the
issues raised.' " <u>Hawkins</u>, 113 F.3d at 1164
(quoting <u>Henrie v. United States Dep't of
Health & Human Servs.</u>, 13 F.3d 359, 360-61
(10th Cir.1993)); 20 C.F.R. § 404.944
(requiring the ALJ to "look[ ] fully into
the issues"). Generally, this means that the
"ALJ has the duty to...obtain[ ] pertinent,
available medical records which come to his
attention during the course of the hearing."
<u>Carter v. Chater</u>, 73 F.3d 1019, 1022 (10th
Cir.1996). Moreover, the ALJ's "duty is
heightened" when a claimant, like Mr.
Madrid, appears before the ALJ without
counsel. <u>Henrie</u>, 13 F.3d at 361; <u>Musgrave v.
Sullivan</u>, 966 F.2d 1371, 1374 (10th
Cir.1992) (same); <u>see also</u> <u>Dixon v. Heckler</u>,
811 F.2d 506, 510 (10th Cir.1987) ("The
[ALJ's] duty of inquiry takes on special
urgency when the claimant has little
education and is unrepresented by
counsel.").

In <u>Madrid</u>, the ALJ acknowledged that Mr. Madrid was referred for

a rheumatology work-up and that a rheumatoid factor test was

performed, but the ALJ apparently dismissed the possibility of a

rheumatological disorder because the record contained no

evidence of the results of a rheumatology work-up.  The court

held that the ALJ committed legal error by not requesting the

rheumatoid factor test results.  The court found that this

failure was especially troubling because Mr. Madrid was not

represented by counsel at the administrative hearing, the test results were in existence at the time of the hearing and apparently available, and the ALJ was aware the test was performed.  447 F.3d at 791.

In the case of Stidham v. Astrue, Case No. 09-2362-JWL, 2010 WL 3862030 (D. Kan. Sept. 27, 2010), the ALJ discounted the opinions of claimant's therapist because the diagnoses were not accompanied by contemporaneous treatment notes.  The court held that the facts of the case demonstrated that there were pertinent, available records which came to the ALJ's attention, but he failed to obtain them, and thereby erred (the mental health treatment notes were in existence at the time of the hearing and apparently available, but the ALJ did not attempt to secure them).  2010 WL 3862030 at *3-4.  In the case of Maes v. Astrue, 522 F.3d 1093 (10th Cir. 2008), the claimant was represented by counsel.  Nonetheless, the court held that the ALJ had a duty to seek additional medical or treatment records to supplement or clarify the evidence concerning claimant's alleged mental impairment when the ALJ relied on a lack of evidence regarding diagnosis and treatment when determining that plaintiff was not disabled.  522 F.3d at 1097-1098.

In a case with similar facts, Duncan v. Apfel, 156 F.3d 1243 (10th Cir. Aug. 26, 1998, unpublished), both plaintiff and her representative at the hearing told the ALJ that her main

treating physician, Dr. Berger, refused to give her copies of all of her medical records. The ALJ made no attempt to obtain the rest of Dr. Berger's notes, even though that evidence is obviously material to plaintiff's claim. The court held that the ALJ should obtain the rest of Dr. Berger's records on remand. Id. at *2.

In the case before the court, plaintiff's counsel asked the ALJ for her assistance to obtain the 2009 records from St. John's Hospital pertaining to plaintiff's ICU treatment that year for heat stroke. Prior to this request, the ALJ, at the hearing, stated that she wanted those hospital records. However, inexplicably, the record does not indicate that the ALJ made any effort to obtain those records. The ALJ has the authority to issue a subpoena to obtain such records if necessary. 20 C.F.R. § 404.950(d); Baker v. Bowen, 886 F.2d 289, 292 (10th Cir. 1989). The statute requires the ALJ to develop a complete medical history of *at least* the preceding twelve months, and shall make every reasonable effort to obtain from other treating health care providers all medical evidence necessary to make a determination of disability.

It was clear error for the ALJ to fail to attempt to subpoena those records: (1) after the ALJ herself stated she wanted to see those medical records, (2) after plaintiff's counsel asked the ALJ for assistance in obtaining those records,

and then, (3) the ALJ, in her opinion, repeatedly relied on the absence of those records when evaluating the medical records, medical opinions, and plaintiff's credibility (R. at 17, 21, 25).[2]  Furthermore, the ALJ must consider the medical records indicating Dr. Habib's impression that plaintiff had a heat stroke in May 2010.

**IV.  Other issues raised by plaintiff**

Plaintiff also alleges a number of other errors, including whether the ALJ should have ordered a psychological consultative examination, the ALJ's RFC findings, the ALJ's credibility findings, and whether plaintiff can perform all of the jobs identified at step five.  These issues will not be addressed in detail because they may be affected by the ALJ's resolution of the case on remand after the ALJ considers any additional medical records obtained (as well as those already in the record) regarding plaintiff's heat stroke and hospitalization in 2009, and its impact, if any, on plaintiff's mental impairments and limitations.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

The court will briefly address some of these issues, noting concerns that need to be addressed when this case is remanded. First, the court will discuss the decision of the ALJ not to

---

[2] The court cannot say that the failure to obtain the 2009 medical records regarding hospitalization for heat stroke is harmless error in light of the medical evidence in the record linking the heat stroke to mental impairments and limitations, see supra at 5-6, and the medical evidence of borderline IQ, memory problems, learning disorder, history of head injury, and possible organic brain syndrome, see infra at 15-16.

order a psychological consultative examination to evaluate
plaintiff's IQ and memory problems.  Plaintiff's counsel
requested such an examination (R. at 59, 330, 349).  The ALJ did
not order such an exam, citing to the unreliable reporting by
the plaintiff, and the ALJ's determination that the record
contains sufficient information to evaluate plaintiff's mental
functioning (R. at 13).

Consultative medical examinations may be ordered by the ALJ
when the information needed is not readily available from
medical treatment sources.  20 C.F.R. §§ 404.1512(e), 404.1519a.
The Commissioner has broad latitude in ordering consultative
examinations.  Nevertheless, it is clear that, where there is a
direct conflict in the medical evidence requiring resolution, or
where the medical evidence in the record is inconclusive, a
consultative examination is often required for proper resolution
of a disability claim.  Similarly, where additional tests are
required to explain a diagnosis already contained in the record,
resort to a consultative examination may be necessary.  There
must be present some objective evidence in the record suggesting
the existence of a condition which could have a material impact
on the disability decision requiring further investigation.  The
claimant has the burden to make sure there is, in the record,
evidence sufficient to suggest a reasonable possibility that a
severe impairment exists.  When the claimant has satisfied this

burden in that regard, it then becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment. In a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development. In the absence of such a request by counsel, the court will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record. The ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability.  Hawkins v. Chater, 113 F.3d 1162, 1166-1168, 1169 (10th Cir. 1997; see Madrid v. Barnhart, 447 F.3d 788, 791-792 (10th Cir. 2006)(where additional tests are required to explain a diagnosis already in the record, resort to a consultative examination may be necessary).

In 2013 and 2014, Dr. Cannon diagnosed traumatic brain injury due to heat stroke (R. at 829, 855).  On July 18, 2013, Dr. Cannon found that plaintiff's intellect was in the low average range, and diagnosed "borderline intellectual functioning, rule out" (R. at 752-753).  On August 15, 2013, Dr. Mahmood found that plaintiff's remote memory was impaired, that plaintiff was of below average intelligence, and diagnosed a

learning disorder and a history of head injury (R. at 701-702).
On February 29, 2012, Dr. Brown assessed plaintiff with memory
loss; possibly organic brain syndrome (R. at 704-705).  On
February 6, 2012, Lois Blackmon, BA, in a treatment progress
note, stated that plaintiff appears to be borderline
intellectual functioning which has gotten worse since the stroke
(R. at 773).  On November 12, 2012, a treatment provider, Philip
Bolander, LSCSW, diagnosed mild mental retardation (R. at 598)
and noted memory impairment (R. at 597).  On October 31, 2012,
Dr. Khoury found that plaintiff's memory seems impaired (R. at
849-850).  On November 8, 2012, Dr. Cristiano assessed plaintiff
with memory loss (R. at 564-565).  Another treatment note from
August 14, 2013 stated that plaintiff's memory begins to fail
when plaintiff appears stressed (R. at 745).

On remand, the ALJ, as noted above, is directed to obtain
additional medical records from 2009 pertaining to plaintiff's
hospitalization for heat stroke.  The ALJ shall examine those
records, as well as the numerous citations from acceptable
medical and other sources regarding plaintiff's heat stroke, its
impact on plaintiff's mental abilities, including brain injury,
memory and IQ, and determine whether such evidence warrants a
consultative psychological examination.

Second, the ALJ shall make new RFC findings after further
assessment of plaintiff's heat stroke and his mental impairments

and limitations.  In making RFC findings, the ALJ shall make findings of plaintiff's work-related abilities on a function-by-function basis, and only after that express the RFC in terms of the exertional levels of work.  SSR 96-8p, 1996 WL 374184 at *1; Alexander v. Barnhart, 74 Fed. Appx. 23, 28 (10th Cir. Sept. 2, 2003).

Third, in making her credibility assessment, the ALJ noted that there is no objective evidence to substantiate plaintiff's complaint of headaches (R. at 20).  However, on remand, the ALJ must keep in mind that, as this court has repeatedly stated, migraine headaches cannot be diagnosed or confirmed through laboratory or diagnostic testing.  Baxter v. Colvin, Case No. 16-1005-SAC (D. Kan. Dec. 29, 2016; Doc. 17 at 10); Jones v. Astrue, Case No. 09-1061-WEB (D. Kan. June 4, 2010; Doc. 17, Doc. 16 at 10); Shaw v. Astrue, Case No. 08-1103-MLB (D. Kan. April 14, 2009; Doc. 16, Doc. 15 at 14).[3]

Finally, the ALJ, when evaluating plaintiff's daily activities, found that he performs all of his activities of daily living independently, takes care of his children, prepares meals, takes care of the dog, vacuums, washes dishes, cleans,

---

[3] As the court summarized in Shaw and Jones, migraine headaches cannot be diagnosed or confirmed through laboratory or diagnostic techniques.  Duncan v. Astrue, 2008 WL 111158 at *6 (E.D. N.C. Jan. 8, 2008).  Migraine headaches are particularly unsusceptible to diagnostic testing.  Wiltz v. Barnhart, 484 F. Supp.2d 524, 532 (W.D. La. 2006).  Impairments, including migraines, need not be proven through objective clinical findings or laboratory tests.  Thompson v. Barnhart, 493 F. Supp.2d 1206, 1215 (S.D. Ala. 2007); Ortega v. Chater, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996).  Doctors diagnose migraines through the presence of medical signs and symptoms such as nausea, vomiting, sensitivity to light and sound, and photophobia.  See Duncan, 2008 WL 111158 at *6; Ortega v. Chater, 933 F. Supp. at 1075.  Since present-day laboratory tests cannot prove the existence of migraine headaches, these medical signs are often the only means available to prove their existence.  Ortega, 933 F. Supp.2d at 1075.

shops for groceries, mows the lawn a little at a time, and performs household chores a little at a time. The ALJ found that his performance of these activities of daily living indicates that plaintiff's allegedly disabling impairments are not as significant as alleged (R. at 25).

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2013 at 399). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore

not deemed credible.  The court found that substantial evidence

did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her
> home and does her best to engage in ordinary
> life activities is not inconsistent with her
> complaints of pain, and in no way directs a
> finding that she is able to engage in light
> work**.  As we said in <u>McCoy v. Schweiker</u>, 683
> F.2d 1138, 1147 (8th Cir.1982) (en banc),
> the test is whether the claimant has "the
> ability to perform the requisite physical
> acts day in and day out, in the sometimes
> competitive and stressful conditions in
> which real people work in the real world."
> In other words, evidence of performing
> general housework does not preclude a
> finding of disability.  In <u>Rainey v. Dep't
> of Health & Human Servs.</u>, 48 F.3d 292, 203
> (8th Cir.1995), the claimant washed dishes,
> did light cooking, read, watched TV, visited
> with his mother, and drove to shop for
> groceries.  We noted that these were
> activities that were not substantial
> evidence of the ability to do full-time,
> competitive work. In <u>Baumgarten v. Chater</u>,
> 75 F.3d 366, 369 (8th Cir.1996), the ALJ
> pointed to the claimant's daily activities,
> which included making her bed, preparing
> food, performing light housekeeping, grocery
> shopping, and visiting friends.  We found
> this to be an unpersuasive reason to deny
> benefits: "**We have repeatedly held...that
> 'the ability to do activities such as light
> housework and visiting with friends provides
> little or no support for the finding that a
> claimant can perform full-time competitive
> work**.'" Id. (quoting <u>Hogg v. Shalala</u>, 45
> F.3d 276, 278 (8th Cir.1995)). Moreover, we
> have reminded the Commissioner
>
> > **that to find a claimant has the
> > residual functional capacity to
> > perform a certain type of work,
> > the claimant must have the ability
> > to perform the requisite acts day**

> **in and day out, in the sometimes
> competitive and stressful
> conditions in which real people
> work in the real world...The
> ability to do light housework with
> assistance, attend church, or
> visit with friends on the phone
> does not qualify as the ability to
> do substantial gainful activity**.
>
> Thomas v. Sullivan, 876 F.2d 666, 669 (8th
> Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In Hughes v. Astrue, 705 F.3d 276 (7th Cir. 2013), the court

stated:

> [The ALJ] attached great weight to the
> applicant's ability to do laundry, take
> public transportation, and shop for
> groceries. We have remarked the naiveté of
> the Social Security Administration's
> administrative law judges in equating
> household chores to employment. "The
> critical differences between activities of
> daily living and activities in a full-time
> job are that a person has more flexibility
> in scheduling the former than the latter,
> can get help from other persons (... [her]
> husband and other family members), and is
> not held to a minimum standard of
> performance, as she would be by an employer.
> The failure to recognize these differences
> is a recurrent, and deplorable, feature of
> opinions by administrative law judges in
> social security disability cases [citations
> omitted]."

705 F.3d at 278.

On remand, the ALJ should consider plaintiff's daily

activities in light of the case law set forth above in order to

determine if he is able to engage in substantial gainful

activity.  As noted above, the ability to do basic daily activities, including performing household chores and mowing a little at a time, provides little or no support for finding that a claimant can perform full-time competitive work.  The ALJ should make new credibility findings after taking this into consideration, the above case law regarding headaches, and after the ALJ has reevaluated the medical evidence regarding plaintiff's mental impairments and limitations, including any additional evidence pertaining to the heat stroke and hospitalization in 2009, and any additional consultative psychological examination, if it is deemed warranted.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 12th day of June 2017, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge